IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMBER CORRITORE, )<br>as Administrator of the Estate of )<br>APRIL DAWN CORRITORE, )<br>    )<br>        Plaintiff, )<br>    v. )<br>    )<br>WEXFORD HEALTH SOURCES, INC., )<br>MEDICAL ASSOCIATES OF ERIE, )<br>GARY PETERSON, DO, and )<br>CHRISTINA MEALY, PA-C, )<br>    )<br>        Defendants. ) | Case No. 1:19-cv-18-SPB |

## MEMORANDUM OPINION

Pending before the Court in the above-captioned matter is a motion by the Plaintiff, Amber Corritore, acting as Administrator of the Estate of April Dawn Corritore, for leave to file a Third Amended Complaint. For the reasons that follow, the motion will be granted in part and denied in part.

### I.   INTRODUCTION

Plaintiff commenced this civil action on January 22, 2019, following the death of her sister, April Dawn Corritore (at times hereafter, "April" or "Decedent"), on October 20, 2018. April, a former pretrial detainee at the Erie County Prison ("ECP"), suffered from pneumonia throughout her month-long confinement at ECP. Medical records allegedly indicate that she developed bacterial endocarditis and sepsis and eventually died after going into cardiac arrest.

Among those who attended to April during times relevant to this lawsuit were Gary Peterson, D.O. ("Peterson") and Christina Mealy-PA-C ("Mealy"). Mealy is alleged to be an employee of Wexford Health Sources, Inc. ("Wexford"), a private company that contracted to provide health care services to inmates at ECP. Peterson is alleged to be an employee and/or

1

agent of Medical Associates of Erie ("Medical Associates") and Wexford and served as Medical Director of ECP during the time period in question.

The operative pleading in this case is Plaintiff's Second Amended Complaint ("SAC"), which sets forth five causes of action against Defendants Wexford, Medical Associates, Peterson, and Mealy. Count I states an Eighth Amendment claim against Peterson for alleged deliberate indifference to April's serious medical needs. Count II states a §1983 "*Monell*" claim against Wexford based upon Wexford's alleged policy of unilaterally reducing the number of hours during which Peterson would be present to treat inmates at EPC. Counts III and IV assert, respectively, wrongful death and survival action claims against all Defendants based upon the alleged negligence of Mealy and Peterson. Finally, Count V sets forth a state law claim against Wexford for corporate liability based upon Wexford's alleged policy of failing to provide sufficient on-site physician coverage.

On February 3, 2021, Plaintiff filed the instant motion for leave to file a Third Amended Complaint. ECF No. 58. Her intent is to assert new claims against Wexford and one of its alleged employees, LPN Teri Masi, based upon newly acquired information.

Plaintiff states that, during Mealy's deposition on December 10, 2020, she "learned for the first time that the antibiotics prescribed for April Corritore by UMPC were changed by a licensed practical nurse at the Erie County Prison, not Dr. Peterson, as the medical records indicated." ECF No. 58, ¶3. Specifically, "LPN Masi changed the two antibiotics prescribed at UPMC Hamot, Azithromycin and Cephalexin, to a single antibiotic, Doxycycline, during the intake process." Id. ¶5. LPN Masi effectuated this change by writing a prescription in Dr. Peterson's name. Id. ¶6. Plaintiff posits that Masi's actions would never have been known but

2

for Mealy's testimony because "the medical records **falsely** state it was Dr. Peterson who changed the UPMC Hamot prescription to a new antibiotic." Id. ¶8 (emphasis in the original).

Plaintiff also states that her attorney acquired new information after entering his appearance in a separate civil action against Wexford, styled *Scutella v. Erie County Prison, et al.*, No. 1:19-cv-245 (W.D. Pa.), on April 16, 2020. ECF No. 58, ¶11. Specifically, she claims that her attorney obtained a recording in the *Scutella* case of Wexford employees who confirmed Wexford's alleged policy of denying "non-emergent" care to inmates at ECP. Id. ¶12.

Based upon the above recently-acquired information, Plaintiff requests leave to:

a) Add LPN Teri Masi as an additional party to defend claims of deliberate indifference and negligence for acting beyond the scope of her practice and changing the UPMC prescription[s] which was not discovered until December 20, 2020;

b) Amplify the deliberate indifference claims against Wexford Health Sources to include it's [sic] policy of having LPNs practice beyond the scope of their practice and change prescribed medications; and

c) [Amplify] the deliberate indifference claims against Wexford to include its policy of denying medical care that is deemed "non-emergent" which was not discovered until December 20, 2020 and sometime after April 16, 2020.

ECF No. 50, ¶13.

Wexford and Mealy have filed a response to Plaintiff's motion in which they object that the proposed amendments add claims that are barred by the applicable statute of limitations, rendering the proposed amendments futile. ECF Nos. 62 and 63. Medical Associates and Peterson join in the objections of Wexford and Mealy. ECF Nos. 64 and 65. Plaintiff has replied to the Defendants' opposition. ECF No. 66. The issues are sufficiently joined and the matter ripe for adjudication.

## II.     STANDARD OF REVIEW

Rule 15 of the Federal Rule of Civil Procedure governs the amendment and supplementation of pleadings.  As it pertains to this case, Rule 15 allows Plaintiff to amend her pleading "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2). Generally, "[t]he court should freely give leave when justice so requires."  *Id*.

Despite this liberal standard, leave to amend may be denied if the "amendment would be futile or inequitable." *Donald J. Trump for President, Inc. v. Secretary of Pennsylvania*, 830 F. App'x 377, 385 (3d Cir. 2020). An amendment may be considered futile if, for example, the amended claims would be subject to dismissal under Rule 12(b)(6).  See *Budhun v. Reading Hosp. and Medical Center,* 765 F.3d 245, 259 (3d Cir. 2014).

## III.    DISCUSSION

The issue in this case is whether Plaintiff's proposed new claims would be time-barred and, therefore, futile.  In this circuit, a claim can be dismissed at the Rule 12(b)(6) stage on statute of limitations grounds only if the defense is apparent "on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 158 (3d Cir. 2017).

Having carefully reviewed Plaintiff's proposed Third Amended Complaint ("TAC"), the following changes are noted.  First, the TAC would assert a new §1983 claim against Masi for alleged deliberate indifference to the Decedent's serious medical needs (see TAC Count I).  It would also add wrongful death and survivor act claims against Masi based upon her alleged negligence (see TAC Counts III and IV).  Next, the proposed amendments would add vicarious wrongful death and survivor act claims against Wexford based upon Wexford's vicarious liability for Masi's conduct (see TAC Counts III and IV).  Finally, the TAC would add two new

4

corporate policies as bases for Wexford's alleged liability under both §1983 (see TAC Count II) and Pennsylvania corporate liability law (see TAC Count V).

Defendants oppose the proposed amendments on the grounds that all of the claims Plaintiff seeks to add are barred by the applicable statute of limitations. Defendants explain that the events giving rise to this lawsuit occurred in September and October 2018, more than two years before Plaintiff filed the pending motion to amend in February 2021. To the extent Plaintiff is relying on Pennsylvania's "discovery rule" to extend the limitations period, Defendants point out that the discovery rule has no applications in cases involving wrongful death and survival claims. *See Pastierik v. Duquesne Light Co*., 526 A.2d 323, 327 (Pa. 1995) ("Because death is a definitely ascertainable event, and survivors are put on notice that, if an action is to be brought, the cause of action must be determined through the extensive means available at the time of death, there is no basis to extend application of the discovery rule to permit the filing of survival actions, or wrongful death actions, at times beyond the specified statutory period.").

In response, Plaintiff insists that the statute of limitations does not preclude her amendments because: (i) she is merely attempting to "amplify" her existing Eighth Amendment claims against Wexford and (ii) the rule announced in *Pastierik* does not apply to her federal §1983 claim against Masi. Inasmuch as Plaintiff does not appear to be advocating in favor of her proposed amendments to the state law claims in Counts III, IV, and V of the SAC, the Court assumes that Plaintiff is abandoning those proposed amendments. Accordingly, the Court will focus its analysis on the proposed amendments to Plaintiff's §1983 claims in Counts I and II.

To that end, the Court notes that:

[t]he length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). The statute of limitations for a § 1983 claim arising in Pennsylvania is two years. 42 Pa. Cons.

5

> Stat. § 5524(2); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir.1993). Federal law governs a cause of action's accrual date. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir.1991). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998) (citation omitted); *see also Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir.1998). The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known. *Barren v. United States*, 839 F.2d 987, 990 (3d Cir.1988). As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury. *See United States v. Kubrick*, 444 U.S. 111, 120, 100 S. Ct. 352, 62 L.Ed.2d 259 (1979). "The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391, 127 S.Ct. 1091 (internal quotation marks and citations omitted).

*Kach v. Hose*, 589 F.3d 626, 634–35 (3d Cir. 2009).

As set forth in the proposed TAC, the events giving rise to this litigation occurred in September and October of 2018. The latest date on which the subject "injury" could have occurred is October 20, 2018, the date that April Corritore died.

Under federal law, however, a statute of limitations period may be sometimes be equitably tolled. "[T]here are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting ... her rights; or (3) where the plaintiff has timely asserted ... her rights mistakenly in the wrong forum." *D.J.S.-W. by Stewart v. United States*, 962 F.3d 745, 750 (3d Cir. 2020) (citation and quotation omitted). The doctrine is to be "sparingly" applied, *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005), and does not apply unless the plaintiff "exercised due diligence in pursuing and preserving her claim." *D.J.S.-W.*, 962 F.3d at 750 (citation and quotation omitted). Accordingly, "tolling will never extend to 'a garden variety

6

claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline.'" *Id*. (quoting Holland v. Florida, U.S. 631, 651-52 (2010)).

Also relevant to the Court's analysis is Rule 15(c)(1) of the Federal Rules of Civil Procedure. Under that rule, an amendment relates back to the date of the original pleading when:

> **(A)** the law that provides the applicable statute of limitations allows relation back;
>
> **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading; or
>
> **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). As one federal district court has explained:

> [R]elations back depends on the existence of a common core of operative facts uniting the original and newly asserted claims. . . . A common core of operative facts exists if the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds. . . . [N]ew claims will relate back if they restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding complaint. . . . But, if a new claim asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth[,] the claim will not relate back.

*Snider v. Pennsylvania DOC*, No. CV 15-951, 2020 WL 7229817, at *33 (M.D. Pa. Dec. 8, 2020) (internal quotation marks and citations omitted; alterations in the original). "Put another way, the underlying question for a Rule 15(c) analysis is whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (internal

7

quotation marks and citation omitted). "[A]mendments that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously" for relation-back purposes. *Id*.

With these principles in mind, the Court considers each of the proposed amendments.

### A. *Plaintiff's Proposed Claims Against Wexford*

Plaintiff seeks to amend Count II of the SAC by alleging two additional corporate policies as bases for establishing Wexford's liability under §1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a municipality may be held liable for constitutional violations under §1983 where the "government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury"); *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) ("In order to hold Wexford liable [under §1983], Sims must have alleged facts to state a claim that Wexford had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue.").

Plaintiff previously alleged that Wexford, in derogation of its contractual obligations to Erie County, unilaterally reduced the number of hours during which the medical director would be present at ECP, resulting in a level of care that was inadequate vis-a-vis the needs of ECP's inmate population. See ECF No. 5, ¶¶ 20-24, ECF No. 40, ¶¶ 152-162. Plaintiff's TAC would add new allegations stating that:

- "Wexford Health has a custom policy and practice of having licensed practical nurses acting beyond their scope of practice by changing prescribed drugs in accordance with its own protocol and then indicating in the medical record that the change was made by Defendant Dr. Peterson," ECF No. 58-1, ¶186; and

- "Wexford Health has a custom, policy and practice of denying non emergency medical care to 'short term inmates.'" ECF No. 58-1, ¶187.

8

Defendants contend that these allegations present entirely new claims that are now barred by the two-year statute of limitations. Plaintiff insists that her proposed amendments do not introduce new claims but rather "amplify" her prior §1983 claim against Wexford and, therefore, are not time-barred.

Although neither party has specifically addressed the applicability of Rule 15(c)(1), the Court has considered that rule and is satisfied that the proposed amended claims against Wexford relate back to Plaintiff's prior (timely-filed) pleadings, consistent with the provisions of subsection (c)(1)(B). From the start of this litigation, the gravamen of Plaintiff's complaint has been the allegedly deficient medical care that April Corritore received during her confinement at ECP, which (Plaintiff claims) led to April's untimely death. Wexford and two of its alleged employees/agents (i.e., Mealy and Peterson) were among those originally named as Defendants in this case. Thus Wexford has long known that April's course of treatment at the hands of its agents would be the focus of this litigation. Moreover, Wexford has been on notice since February 2019, when the first amended complaint was filed, that its own policies, practices, and customs would be at issue to the extent they impacted April's medical care and resulted in constitutional harm. Although Plaintiff previously focused on Wexford's alleged failure to provide a sufficient number of hours of on-site physician care, the theories that Plaintiff now seeks to add arise out of the same course of medical treatment previously pled. In fact, the original and ensuing complaints in this case outlined April's course of treatment in great detail, including LPN Masi's actions during the intake procedure and the fact that April never received the antibiotics that her practitioners at UPMC had prescribed just days prior to her confinement for pneumonia. In short, from the start, Plaintiff has predicated her §1983 claims on the Defendants' failure to provide more acute treatment for April's worsening condition.

Accordingly, the proposed amended claims against Wexford arise out of the same "conduct . . . set out -- or attempted to be set out -- in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). As such, Wexford had "fair notice of the general fact situation and legal theory upon which the amending party proceeds." *Snider,* 2020 WL 7229817, at *33. The Plaintiff's motion will be granted as it relates to the proposed §1983 claims against Wexford.

### B. Plaintiff's Proposed Claim Against Masi

The claims against Masi involve slightly different considerations, as she would be a new party to this case. Under Rule 15(c)(1)(C), an amendment that adds a new party relates back "if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint," the new party:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

For the reasons previously discussed, the Court finds that the proposed claim against Masi satisfies Rule 15(c)(1)(B). As noted, Plaintiff's original and ensuing pleadings all alleged Masi's involvement in April Corritore's course of treatment, at least to the extent it was then known. And the claim that Plaintiff now seeks to add against Masi, based on recently acquired information, arises out of the same course of events that was previously pled.

As for the remaining requirements of Rule 15(c)(1)(C), there is no evidence before the Court to indicate that Masi personally received notice of the litigation during the 90-day service period established by Rule 4(m). In this circuit, however, notice can be imputed on the basis of either a "shared attorney" or an "identity of interest." *See Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 196-200 (3d Cir. 2001).

10

The "identity of interest" method "generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation" to the additional party. *Singletary*, 266 F.3d at 197 (quoting 6A Charles A. Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed. 1990)). "[A]bsent other circumstances that permit the inference that notice was actually received, a non-management employee ... does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee for Rule 15(c)[ ] purposes." *Id*. at 200; *see, e.g., Farrow v. City of Phila*., No. CV 20-5792, 2021 WL 2778554, at *3 (E.D. Pa. July 1, 2021) (Philadelphia police officers were non-management employees who did not have imputed knowledge of a suit through claims filed against the City of Philadelphia). In this case, assuming that Masi is an employee of Wexford as alleged, her status as a Licensed Practical Nurse involves non-managerial duties which preclude her from sharing an "identity of interest" with Wexford.

We also consider the "shared attorney" method of imputing notice, however. This theory proceeds under the assumption that where the originally named party and the party sought to be added are represented by the same attorney, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *See id.* at 196. Here, Masi is not yet a party to this lawsuit, but she is alleged to be a Wexford employee, and Wexford's counsel appears to be representing her interests in opposing Plaintiff's motion to amend. As Plaintiff points out, Wexford's counsel will likely represent Masi if she is brought into this case as a party. No evidence is before the Court at this point to rebut the presumption of Masi's imputed notice, through shared counsel, of her potential liability in this litigation. Thus, at least for present purposes, the requirements of Rule 15(c)(1)(C)(i) are satisfied.

Rule 15(c)(1)(C)(ii) adds a further requirement that the newly-added party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." In her original complaint, Plaintiff averred the following:

- [ ] On September 17, 2018, Ms. April Corritore was diagnosed with pneumonia and cellulitis, and was prescribed two different antibiotics to treat her infections by physicians at UPMC Hamot.

- [ ] Two days later, on September 19, 2018, Ms. Corritore was processed into the Erie County Prison ("ECP"), which included the completion of an Intake Medical History and Screening form by LPN Teri Masi.

- [ ] Ms. Corritore was suffering from pneumonia when she was processed into the ECP, and as reflected on her Intake Medical History. LPN Masi recorded in the intake questionnaire that:

    a. Ms. Corritore had medical problems the prison should know about;

    b. Ms. Corritore was taking medication prior to her incarceration;

    c. Ms. Corritore was experiencing the following symptoms: Disoriented, Fever, Nausea, Active cough, and Asthma/Respiratory Distress.

    d. Ms. Corritore was currently diagnosed with pneumonia;

    e. Ms. Corritore had last experienced shortness of breath that day;

    f. Ms. Corritore had previously been hospitalized related to pulmonary disease; and

    g. Ms. Corritore was currently using daily a properly prescribed Ventolin Inhaler.

- [ ] Even though Ms. Corritore was suffering from pneumonia when she was processed into the ECP, the antibiotics prescribed by the physicians at UPMC Hamot were not ordered for Ms. Corritore by anyone at ECP.

ECF No. 1, ¶¶27-30.

Plaintiff states in her motion that she recently "learned for the first time" during Mealy's deposition that the antibiotics prescribed by the UPMC physicians were changed by Masi, not

Dr. Peterson, contrary to the notations in April Corritore's medical records.  ECF No. 58, ¶3.  Specifically, Masi is alleged to have substituted a single antibiotic, Doxycycline, for the two that were prescribed at UPMC Hamot, by writing a prescription in Dr. Peterson's name.  Id. ¶¶5-6.  Plaintiff posits that, by virtue of these actions, Masi acted outside the scope of her authority as an LPN.  Id. ¶9.  Plaintiff also states that Masi's actions would never have been known but for Mealy's testimony because "the medical records **falsely** state it was Dr. Peterson who changed the UPMC Hamot prescription to a new antibiotic."  Id. ¶8 (emphasis in the original).  For present purposes, these allegations are sufficient to establish that Masi "knew or should have known" that Plaintiff would assert a claim against her, based upon her alleged involvement in unilaterally changing April's medication without proper authorization, but for Plaintiff's mistake in believing that Dr. Peterson had been responsible for the medication change.  Accordingly, the Court finds that Plaintiff's proposed §1983 claim against Masi relates back to her prior pleadings, all of which were filed well within the applicable limitations period.

Even if this were not so, however, the Court would allow the amendment on the grounds that Plaintiff has pled fraud in connection with the discovery of facts serving as the basis of her new claim.  As discussed, federal case law allows for the equitable tolling of a limitations period in exceptional situations where, for example, the defendant has actively misled the plaintiff respecting the plaintiff's cause of action or the plaintiff in some extraordinary way has been prevented from asserting her rights.  *D.J.S.-W. by Stewart v. United States*, 962 F.3d at 750.  Plaintiff's allegations in the TAC are sufficient to colorably invoke these principles, which cannot be definitively settled at this point, as questions of equitable tolling are highly fact intensive and the record at present is limited.  Because the Court cannot discern from the face of the TAC that Plaintiff's proposed claims are time-barred, the amendments will be permitted.

## IV.  CONCLUSION

Based upon the foregoing reasons, the Court will deny Plaintiff's motion for leave to amend to the extent Plaintiff seeks to add the additional state law claims against Wexford and Masi that are set forth in Counts III, IV and V of the proposed Third Amended Complaint, filed at ECF No. 58-1.  The motion will be granted insofar as Plaintiff seeks to add the additional §1983 claims against Wexford and Masi that are set forth in Counts I and II of the proposed Third Amended Complaint.

An appropriate order follows.

                                                                                        *Susan Paradise Baxter*
                                                                                        SUSAN PARADISE BAXTER
                                                                                        United States District Judge